**No. 25-50595**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

LAS AMERICAS IMMIGRANT ADVOCACY CENTER; AMERICAN GATEWAYS; COUNTY OF EL PASO, TEXAS,

*Plaintiffs-Appellees,*

*v.*

FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY; GREGORY ABBOTT, SUED IN HIS OFFICIAL CAPACITY; WARREN K. PAXTON, SUED IN HIS OFFICIAL CAPACITY,

*Defendants-Appellants.*

UNITED STATES OF AMERICA,

*Plaintiff,*

*v.*

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS

*Defendant-Appellant.*

LA UNION DEL PUEBLO ENTERO; SARAH DOE; MARY DOE; JOHN DOE; JAMES DOE,

*Plaintiffs-Appellees*

*v.*

GREGORY ABBOTT, SUED IN HIS OFFICIAL CAPACITY; WARREN K. PAXTON, SUED IN HIS OFFICIAL CAPACITY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
USDC No. 1:23-cv-1537
USDC No. 1:24-cv-8
USDC No. 1:24-cv-270

**BRIEF OF PLAINTIFFS-APPELLEES LA UNION DEL PUEBLO ENTERO, SARAH DOE, MARY DOE, JOHN DOE, AND JAMES DOE**

Lynn Damiano Pearson
damianopearson@nilc.org
NATIONAL IMMIGRATION
LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
Telephone: (213) 639-3900

Peter McGraw
mcgraw@nilc.org
NATIONAL IMMIGRATION
LAW CENTER
P.O. BOX 43573
Washington, D.C.
Telephone: (213) 639-3900

Nina Perales
nperales@maldef.org
Alma Buena
Antonio DelGrande
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND, INC.
(MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Appellants are government officials and entities. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**
La Unión del Pueblo Entero (LUPE)
Sarah Doe
Mary Doe
John Doe
James Doe

*Represented by*

Nina Perales
Alma Buena
Antonio DelGrande
Mexican American Legal Defense and Educational Fund

Lynn Damiano Pearson
Peter McGraw
National Immigration Law Center

**Defendants-Appellants**
Governor of Texas Gregory Abbott
Director of the Texas Department of Public Safety Freeman F. Martin
Texas Attorney General Warren Kenneth Paxton

*Represented by*

Kenneth Paxton
Brent Webster

William R. Peterson
Daniel M. Ortner
Monroe David Bryant Jr.
Office of the Attorney General of Texas

**Consolidated Plaintiffs-Appellees**
Las Americas Immigrant Advocacy Center
American Gateways
County of El Paso, Texas

*Represented by*

Counsel for Las Americas Immigrant Advocacy Center and American Gateways
Cody Wofsy
American Civil Liberties Union Foundation

David A. Donatti
Adriana C. Piñon
American Civil Liberties Union Foundation of Texas

Daniel Hatoum
Kate Gibson Kumar
Texas Civil Rights Project

Counsel for El Paso County
Jo Anne Bernal
Christina Sanchez
Bernardo Rafael Cruz
Office of the El Paso County Attorney

**Other Interested Parties**
Hidalgo County District Attorney Toribio “Terry” Palacios
Harris County District Attorney Sean Teare
Bastrop County District Attorney Bryan Goertz
McLennan County District Attorney Josh Tetens

*Represented by*

Counsel for Hidalgo County District Attorney
William H. Farrell

Office of the Attorney General of Texas

Counsel for Harris County District Attorney
Eric J.R. Nichols
J.R. Johnson
Timothy J. Stostad
Butler Snow, L.L.P.

Counsel for Bastrop County District Attorney
William H. Farrell
Office of the Attorney General of Texas

Counsel for McLennan County District Attorney
William H. Farrell
Daniel M. Ortner
Monroe David Bryant, Jr.
Office of the Attorney General of Texas

*/s/ Nina Perales*
Attorney of Record for LUPE Plaintiffs-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case because this Court lacks jurisdiction over the appeal, and this Court's decision in *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026), nullified the reason for this appeal. If the Court disagrees, *LUPE* Plaintiffs-Appellees respectfully request leave to participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................................v

TABLE OF AUTHORITIES ........................................................................ viii

INTRODUCTION ..........................................................................................1

STATEMENT OF JURISDICTION...................................................................2

ISSUES PRESENTED.......................................................................................2

STATEMENT OF THE CASE...........................................................................3

SUMMARY OF THE ARGUMENT ..................................................................7

STANDARD OF REVIEW ..................................................................................8

ARGUMENT .......................................................................................................9

I. This Court Lacks Appellate Jurisdiction Under the Collateral Order Doctrine ..........................................................................................9

A. The Order Did Not Conclusively Determine the Question of Sovereign Immunity and Merely Effected a Discretionary Stay of Proceedings .....10

B. Appellants Suffered No Pre-Trial Burdens as a Result of the District Court's Order.........................................................................16

C. The District Court's Order Does Not Threaten a Substantial Public Interest or High-Order Value ......................................................18

II. Remand Is Appropriate for the District Court to Address the Sovereign Immunity Arguments in the First Instance ..........................................20

III. Even If the Court Were to Reach the Merits, Sovereign Immunity Does Not Bar *LUPE* Plaintiffs' Claims against Appellants ...................................23

A. Director Martin Is Sufficiently Connected to the Enforcement of S.B. 4 ....................25

B. Attorney General Paxton Is Sufficiently Connected to Enforcement of S.B. 4 ....................27

C. Governor Abbott Has More Than a General Duty to Enforce S.B. 4.......29

CONCLUSION....................32

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Compensation*,
851 F.3d 507 (5th Cir. 2017)........................................................................ 29

*Alice L. v. Dusek*,
492 F.3d 565 (5th Cir. 2007)........................................................................ 13

*Arizona v. United States*,
567 U.S. 387 (2012)..................................................................................... 29

*Arnold v. Williams*,
979 F.3d 262 (5th Cir. 2020)........................................................................ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................... 23

*Ashley v. Clay County*,
125 F.4th 654 (5th Cir. 2025) ...................................................................... 22

*Ballard v. Burton*,
444 F.3d 391 (5th Cir. 2006)........................................................................ 11

*Bouchard Transp. Co. v. Florida Dep't of Env't Protection*,
91 F.3d 1445 (11th Cir. 1996)...................................................................... 17

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ................................................................ 8, 17, 18

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019)................................................................ 24, 27, 29

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)................................................................................. 9, 11

*Digital Equipment Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)....................................................................................... 9

*Ex parte Young*,
209 U.S. 123 (1908) .................................................... 23, 24, 27, 29, 31

*Geo Group, Inc. v. Menocal*,
607 U.S. 438 (2026) .................................................... 9

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) .................................................... 23

*Green Valley Special Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020) .................................................... 23-24

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) .................................................... 13

*Health Vision Ass'n. v. Abbott*,
138 F.4th 385 (5th Cir. 2025) .................................................... 8

*Helton v. Clements*,
787 F.2d 1016 (5th Cir. 1986) .................................................... 22

*Henry v. Lake Charles American Press, L.L.C.*,
566 F.3d 164 (5th Cir. 2009) .................................................... 10-11, 19

*Jew v. Dobbins*,
2025 WL 3766015 (5th Cir. Dec. 30, 2025) .................................................... 11, 12, 15

*Johnson v. Jones*,
515 U.S. 304 (1995) .................................................... 16

*K.P. v. LeBlanc*,
729 F.3d 427 (5th Cir. 2013) .................................................... 23

*Kershaw v. Shalala*,
9 F.3d 11 (5th Cir. 1993) .................................................... 11

*La Union del Pueblo Entero v. Nelson*,
163 F.4th 239 (5th Cir. 2025) .................................................... 24, 27, 28

*Landis v. North American Co.*,
299 U.S. 248 (1936) .......... 14

*Lopez v. Ramirez*,
2026 WL 1481275 (5th Cir. May 27, 2026) .......... 12, 15, 17, 20

*Martin v. Halliburton*,
618 F.3d 476 (5th Cir. 2010) .......... 9

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) .......... 30

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) .......... 23, 24, 26, 29

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) .......... 18

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) .......... 27

*Norsworthy v. Houston Indep. School Dist.*,
70 F.4th 332 (5th Cir. 2023) .......... 23

*Ostrewich v. Tatum*,
72 F.4th 94 (5th Cir. 2023) .......... 27, 28

*Owner-Operator Indep. Drivers Ass'n v. United States Dep't of Transp.*,
858 F.3d 980 (5th Cir. 2017) .......... 8

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) .......... 9-10, 11, 16

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 23

*Reyes v. Sazan*,
168 F.3d 158 (5th Cir. 1999) .......... 22

*Satanic Temple Inc. v. Texas Health & Hum. Servs. Comm'n*,
79 F.4th 512 (5th Cir. 2023) .......... 13-14

*Supermercados Econo, Inc. v. Integrand Assurance Co.*,
375 F.3d 1 (1st Cir. 2004) .......... 20

*TEC Eng'g Corp. v. Budget Molders Supply, Inc.*,
82 F.3d 542 (1st Cir. 1996) .......... 20

*Tex. Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) .......... 24, 27

*Texas v. Caremark, Inc.*,
584 F.3d 655 (5th Cir. 2009) .......... 21

*Tex. All. for Retired Ams. v. Scott*,
28 F.4th 669 (5th Cir. 2022) .......... 24, 29

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) .......... 26

*Ueckert v. Guerra*,
38 F.4th 446 (5th Cir. 2022) .......... 10

*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023) .......... 30

*United States v. Texas*,
173 F.4th 659 (5th Cir. 2026) .......... Passim

*United States v. Texas*,
586 F. Supp. 3d 574 (2022) .......... 30

*Utah v. Su*,
109 F.4th 313 (5th Cir. 2024) .......... 31

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) .......... 9

*Wertenbroch v. Hardeman*,
178 F.4th 186 (5th Cir. 2026) .......................................................... 10, 14, 15. 22

*Whole Woman's Health v. Jackson*,
13 F.4th 434 (5th Cir. 2021) .......................................................................... 13

*Will v. Hallock*,
546 U.S. 345 (2006) ........................................................................................ 9, 18

*Wooten v. Roach*,
964 F.3d 395 (5th Cir. 2020) .......................................................................... 13

**STATUTES**

28 U.S.C. § 1331 ............................................................................................ 2

28 U.S.C. §1343 ............................................................................................. 2

28 U.S.C. § 2201 ............................................................................................ 2

28 U.S.C. § 2202 ............................................................................................ 2

42 U.S.C. § 1983 ............................................................................................ 2

Tex. Civ. Prac. & Rem. Code § 117.003(f) ...................................................... 28

Tex. Gov't Code § 402.028(a) ........................................................................ 28

Tex. Gov't Code Ann. § 411.001 .................................................................... 30

Tex. Gov't Code Ann. § 411.003 .................................................................... 30

Tex. Gov't Code Ann. § 411.004 .................................................................... 30

Tex. Gov't Code § 411.006(a)(1)-(2) ............................................................... 25

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 23

Fed. R. Civ. P. 12(b)(6) .......... 23

**OTHER AUTHORITIES**

S.B. 4, 88th Leg., 4th Spec. Sess. (Tex. 2023) .......... Passim

*Public Hearing Before the S. Comm. on Border Sec.*, 2023 Leg., 88th Sess. (Tex. Nov. 1, 2023) .......... 26

*Public Hearing Before the S. Comm. on Border Sec.*, 2023 Leg., 88th Sess. (Tex. Mar. 16, 2023) .......... 28-29

Press Release, *Governor Abbott Statement on Preliminary Injunction against SB 4* (Feb. 29, 2024) .......... 31

Xavier Alvarez & Erika De Los Reyes, *Arrests Under Texas' Controversial SB4 Law Begin in Rio Grande Valley*, The Monitor (May 27, 2026) .......... 22

## INTRODUCTION

Appellants rushed to this Court with an interlocutory appeal that does not belong here. First, the Court lacks jurisdiction to hear the appeal under the collateral order doctrine. The district court's denial of the State's motion to dismiss without prejudice to refiling was an interim ruling and did not conclusively resolve the sovereign immunity question. In addition, because the district court maintained the stay that Appellants originally requested, Appellants were not required to take any steps to defend the case, including by filing an answer. The district court's practical and discretionary docket management does not give rise to an interlocutory appeal.

Second, even if this Court has jurisdiction under the collateral order doctrine, Appellants already have the relief they seek, and there is no longer any reason to maintain this appeal. Appellants ask this Court to vacate and remand so that the district court may consider their motion to dismiss "in the first instance." However, this Court's decision in *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026), lifted the stay pending appeal in the district court. Since May 15, 2026, Appellants have had the opportunity to litigate their motion to dismiss in the district court but have chosen to continue this baseless appeal and delay the very relief they claim to seek.

In light of these circumstances, this Court should either dismiss the appeal for lack of jurisdiction, or in the alternative, vacate and remand for further proceedings on Appellants' motion to dismiss.

## STATEMENT OF JURISDICTION

The district court has original jurisdiction over Plaintiffs' causes of action under 28 U.S.C. § 1331 and §1343 and 42 U.S.C. § 1983, and has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202.

The Court lacks appellate jurisdiction over this interlocutory appeal because, under the collateral order doctrine, the district court's order did not conclusively resolve sovereign immunity question, and because the Court's decision in in *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026), has already provided Appellants the relief they seek, *i.e.*, the opportunity to receive a ruling in the district court on the merits of their motion to dismiss.

## ISSUES PRESENTED

1. Whether the Court lacks jurisdiction under the collateral order doctrine because the order below did not conclusively resolve any legal issue and was made without prejudice to Appellants.

2. Whether this Court's decision in the related appeal *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026), nullified the purpose of this appeal by providing Appellants the relief they seek, *i.e.*, the opportunity to receive a ruling in the district court on the merits of their motion to dismiss.

3. Whether, if the Court concludes it has appellate jurisdiction, the administrative nature of the order below requires the Court to vacate and remand for further proceedings instead of ruling on the merits of Appellants' sovereign immunity arguments.

## STATEMENT OF THE CASE

This interlocutory appeal arises from litigation involving a Texas statute, Senate Bill 4 (S.B. 4), that criminalizes unauthorized entry and re-entry into Texas from a foreign nation. Two separate sets of Plaintiffs filed suit to challenge the law.[1] ROA.23-45, 2140-65. The first set of Plaintiffs, Las Americas, *et al.*, secured a preliminary injunction which Texas promptly appealed. ROA.1531-1644, 1645-47. Shortly thereafter, Plaintiffs LUPE, *et al.*, filed suit. ROA.2140-65. In the *LUPE* action, Defendants Texas officials (the "State" or "Texas") and *LUPE* Plaintiffs jointly requested (and received) a stay of proceedings pending the outcome of the preliminary injunction appeal. ROA.2230-40. The district court granted the requested stay. ROA.2364. In April 2025, the district court temporarily lifted the stay of proceeding to consolidate the *Las Americas* and *LUPE* Plaintiffs' actions. ROA.2392.

---

[1] The United States also filed suit but later dismissed its claims; that case is not at issue here.

In May and June 2025, despite the stay of litigation, the State filed motions in the district court to dismiss *LUPE* and *Las Americas* on sovereign immunity grounds, the same legal grounds included in the State's then-pending Fifth Circuit appeal of the preliminary injunction (*United States v. Texas*, No. 24-50149 (5th Cir.)). ROA.869-88, 936-57.

At a status conference on June 17, 2025, the district court addressed the motions to dismiss and noted: "we're currently on appeal, and we don't have yet a decision out of the Fifth Circuit on that appeal." ROA.1000 (Status Conf. Tr. ("Tr.") 11:7-9). The district court observed that "the motion to dismiss, in effect, deals with some of the issues that are at least tangentially in the Fifth Circuit Court of Appeals[,]" and explained: "I don't want to step on the prerogative of the Fifth Circuit by making a ruling which impacts the merits of the case in a way that the Fifth Circuit feels is within their exclusive jurisdiction[.]" ROA.1001 (Tr. 11:12-15, 18:3-7). The district court concluded that it could not rule on the motions to dismiss, and that the motions should be refiled "at a later date, when we reengage the case." ROA.1007 (Tr. 18:3-7).

The district court characterized its denial of the State's motions to dismiss as follows: "I hate to use the word 'deny' because it leaves the impression that I'm ruling on the merits. I'm going to -- I guess the word is deny as moot or vacate as moot." ROA.1007 (Tr. 18:21-24). The court clerk suggested entering a standardized

text order denying the motions without prejudice, subject to refiling at a later time and the district court agreed: "That's what we'll do. But it has nothing to do with the merits." ROA.1007-08 (Tr. 18:25-19:4). Finally, at the request of counsel for the State, the district court confirmed that all proceedings in the district court would remain stayed. ROA.1008 (Tr. 19:5-9).

The district court entered its text orders on June 23, 2025, denying the State's motions to dismiss "without prejudice subject to refiling after the case is returned from the 5th Circuit." ROA.977, 980. The following day, the district court stayed further proceedings in the consolidated *LUPE* and *Las Americas* cases pending the outcome of the preliminary injunction appeal. ROA.690-62. On July 21, 2025, the State filed the instant appeal. ROA.975-76.

After filing this appeal, however, the State asked to stay it, arguing that a decision in the preliminary injunction appeal, *United States v. Texas*, "may obviate the need for this appeal to go forward." Defs.' Unopposed Mot. to Hold Appeal in Abeyance, ECF No. 29 at 2 (Nov. 18, 2025). Acknowledging the overlap of issues in this appeal and the preliminary injunction appeal, the State further argued to this Court that "[a]n abatement in this case, which presents questions of sovereign immunity in addition to the Article III standing questions already pending before the en banc Court, would serve judicial economy by conserving the resources of the

Court and the parties." *Id.* This Court granted the State's request. Order, ECF No. 38-1 (Nov. 24, 2025).

On April 24, 2026, the *en banc* Fifth Circuit vacated the preliminary injunction of S.B. 4 on the grounds that the *Las Americas* Plaintiffs lacked standing to sue. *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026). The stay of *LUPE* in the district court expired on May 15, 2026 when this Court issued its mandate in *United States v. Texas*. *See* ROA.962 (Stay Order). As the State predicted, the decision in *United States v. Texas* obviated the need for this appeal. Once the district court stay was lifted, Texas was free to pursue its motion to dismiss *LUPE* on standing and sovereign immunity grounds in the district court because, as the district court contemplated, the district court case was "reengage[d]." ROA.1007 (Tr. 18:3-7).

Instead, Texas maintained this appeal, continuing to deprive the district court of its ability to adjudicate the motion to dismiss. The State waited to months afer the decision in *United States v. Texas*, then filed its opening brief here asking this Court to "remand and direct the district court to rule on the substance of Defendants-Appellants' motion to dismiss *in the first instance*." Appellants' Brief ("App. Br.") 16, 23 (emphasis added). At this point, because Texas can obtain a ruling on its sovereign immunity arguments "in the first instance" by filing its motion to dismiss

in the district court, the only effect of this appeal is to delay district court proceedings and waste this Court's resources.

**SUMMARY OF THE ARGUMENT**

This Court lacks appellate jurisdiction. The district court originally stayed litigation at the request of the parties pending the outcome of the preliminary injunction appeal in *Las Americas*. The State moved to dismiss despite that stay and now appeals from a one-sentence text order docket entry denying their motion to dismiss without prejudice to refiling following expiration of the stay.

The district court's text order did not conclusively resolve Appellants' sovereign immunity defense, and the next day the district court entered an order clarifying that all deadlines and proceedings were stayed, just as the State had previously requested. The district court did not require the State to file an answer and did not impose any other burden of litigation as a result of the challenged order. In short, the district court's practical management of its docket did not create an appealable collateral order.

At this point, the only obstacle to the State's pursuit of its sovereign immunity arguments in the district court is this very appeal. If the Court concludes that it has appellate jurisdiction and finds error in the district court's order denying the State's motion to dismiss, it should vacate and remand to the district court for consideration of sovereign immunity in the first instance. *LUPE* Plaintiffs never even had the

opportunity to respond to the State's sovereign immunity arguments because of the district court's stay. This Court has ordered similar remands in several cases where the record from the district court is inadequate on a claim of immunity. Remand is particularly appropriate here where immunity may turn on fact determinations.

*LUPE* Plaintiffs submit that it would be inappropriate for this Court to reach the merits of the State's claim of sovereign immunity. But if the Court does reach the merits of this issue, it should conclude that the State is not entitled to sovereign immunity.

**STANDARD OF REVIEW**

Whether an order is an appealable collateral order over which the Court has appellate jurisdiction is a question of law reviewed *de novo*. *See Owner-Operator Indep. Drivers Ass'n v. United States Dep't of Transp.*, 858 F.3d 980, 982 (5th Cir. 2017).

If the Court concludes that it has appellate jurisdiction, it reviews the district court's denial of Appellants' motion to dismiss *de novo*, *see Health Vision Ass'n v. Abbott*, 138 F.4th 385, 395 (5th Cir. 2025), and the district court's order to stay litigation for abuse of discretion. *See Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

## ARGUMENT

### I. <u>This Court Lacks Appellate Jurisdiction Under the Collateral Order Doctrine.</u>

Appellants bear the burden of establishing jurisdiction. *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010). The State argues that the district court entered an appealable collateral order, App. Br. 8, but the collateral order doctrine is "narrow, stringent, and of modest scope." *Geo Group, Inc. v. Menocal*, 607 U.S. 438, 444 (2026) (internal citations omitted). Only a "small class" of non-final decisions are immediately appealable. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *Will v. Hallock*, 546 U.S. 345, 350 (2006) (class of collaterally appealable orders must remain "narrow and selective in its membership"). The collateral order doctrine should "never be allowed to swallow the general rule" that a party is entitled to a single appeal. *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *Will*, 546 U.S. at 350.

The order from which the State appeals satisfies none of the three "non-negotiable" conditions that must be met to obtain interlocutory review. *Menocal*, 607 U.S. at 444 ("A pre-judgment order, to get immediate review, must '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'") (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988)); *see also Puerto Rico Aqueduct & Sewer Auth. v.*

*Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993); *Wertenbroch v. Hardeman*, 178 F.4th 186, 189 (5th Cir. 2026).

### A. The Order Did Not Conclusively Determine the Question of Sovereign Immunity and Merely Effected a Discretionary Stay of Proceedings.

The State appeals from a one-sentence text order that reads: "The motion is denied without prejudice subject to refiling after the case is returned from the 5th Circuit." ROA.980. At the preceding June 17 status conference, the district court hesitated even to use the word "deny" to describe its action on the State's motion to dismiss. ROA.1007-08 (Tr. 18:21-19:4). The district court made clear it was not ruling on the merits of the State's sovereign immunity defense, ROA.1008 (Tr. 19:3-4) (stating that the denial "has nothing to do with the merits"), and instead announced its intention to stay proceedings until after a decision from this Court on the State's then-pending preliminary injunction appeal. ROA.1011 (Tr. 22:16-17). The district court repeatedly assured the State of the opportunity to refile its motion following expiration of that stay. ROA.1007-08, 1011 (Tr. 18:21-19:4, 22:2-17). The very next day, the district court re-imposed its stay of "all deadlines and proceedings" in the case. ROA.960-62 (Re-imposed Stay Order).

This is not the order of a court that "intends to have nothing further to do" with the State's sovereign immunity motion. *Ueckert v. Guerra*, 38 F.4th 446, 450 (5th Cir. 2022); *accord Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d

164, 173-74 (5th Cir. 2009) (a conclusive order "should not be subject to later review or revision in the district court" and is one that "a district court rarely, if ever, revisits"). The district court expressly intended to take up the State's motion following expiration of the stay and with the benefit of this Court's decision in the preliminary injunction appeal. ROA.960-62 (Re-imposed Stay Order) (setting stay expiration for "30 days after issuance of any mandate to this Court from the appeal of the preliminary injunction order"). The district court's "tentative, informal, [and] incomplete" order denying the State's motion is not subject to immediate appeal. *Metcalf & Eddy, Inc.*, 506 U.S. at 142 (citing *Cohen*, 337 U.S. at 546).

Two recent decisions by this Court are instructive on this point.[2] First, in *Jew v. Dobbins*, city officials moved for judgment on the pleadings based in part on qualified immunity. 2025 WL 3766015, at *1 (5th Cir. Dec. 30, 2025). The district court denied the officials' motion without prejudice, stayed the case, and ordered the parties to confer to reach consensus on whether plaintiff had actually been convicted of a crime, an issue related to the plaintiff's §1983 claim. *Id*. at *2. This Court concluded that the challenged order denying the officials' motion without prejudice "did not 'finally dispose of an issue.'" *Id*. at *3 (citing *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993)). Instead, the order merely stayed litigation pending an event

[2] Both decisions are unpublished and therefore non-binding, but persuasive authority. *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

that would facilitate a decision on the merits of the officials' defenses. *Id*. ("[S]tay orders rarely satisfy the requirements of the collateral-order doctrine.") (internal citations omitted). The district court "did not reach" the qualified immunity issue, and its denial of the officials' motion and order to confer regarding a "threshold matter" therefore did not amount to a denial of immunity. *Id*. at *4.

Even more recently, and under similar circumstances, this Court described a district court's denial of an immunity-based motion to dismiss without prejudice and referral of the litigation to mediation as a "case-management deferral pending a discrete, nonbinding event" and "not a conclusive determination of anything," much less the defendants' immunity claim. *Lopez v. Ramirez*, 2026 WL 1481275 at *4 (5th Cir. May 27, 2026).

So too here. The district court denied the State's motion to dismiss without prejudice and immediately re-stayed "all deadlines and proceedings" in the litigation pending this Court's resolution of the then-pending preliminary injunction appeal. ROA.977-79, 980-82. As the district court carefully explained during the June 17 status conference, the district court did not address the question of sovereign immunity because that issue was before this Court in the preliminary injunction appeal:

> I am going to deny, without prejudice, subject to refiling . . . . And the reason for that is that we're currently on appeal, and we don't have yet a decision out of the Fifth Circuit on that appeal. And while I have every right and responsibility to move forward with the case on those

> matters that are to not taken up on appeal, like these ministerial matters we're dealing with now, the motion to dismiss, in effect, deals with some of the issues that are at least tangentially in the Fifth Circuit Court of Appeals, to some degree.

ROA.1000 (Tr. 11:3-20).

District courts "should not attempt to assert jurisdiction over a case simultaneously" with an appellate court. *Wooten v. Roach*, 964 F.3d 395, 403 (5th Cir. 2020) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). How broadly a court defines the issues involved in an appeal depends on the nature of the appeal, *Alice L. v. Dusek*, 492 F.3d 565, 565 (5th Cir. 2007), and is broader where sovereign immunity is involved. *Whole Woman's Health v. Jackson*, 13 F.4th 434, 446 (5th Cir. 2021). In its appeal of the preliminary injunction, the State argued the same issue it argued in its motion to dismiss—that the plaintiffs could not "overcome sovereign immunity." Br. for Appellants, *United States v. Texas*, No. 24-50149 (5th Cir. filed March 13, 2024), ECF No. 87, at 10, 15-20. *See also* Reply Br. for Appellants, *United States v. Texas*, No. 24-50149 (5th Cir. Filed March 26, 2024), ECF No. 160, at 3-4. The district court was correct to note that a its ruling on the merits of the State's motion to dismiss would needlessly complicate the pending appeal.[3]

[3] The State argues, citing *Satanic Temple Inc. v. Texas Health & Human Services Commission*, 79 F.4th 512 (5th Cir. 2023), that the district court may have had jurisdiction to rule on the State's motion to dismiss while the State's interlocutory appeal of the preliminary injunction was pending. App. Br. 15. Regardless, *Satanic*

Given the prospect of duplicative litigation, the district court certainly acted within its broad discretion to "weigh competing interests" and stay proceedings in the trial court while preserving the State's opportunity to be heard on its sovereign immunity argument. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Indeed, the State had previously requested and received the same stay of proceedings in the district court, ROA.2364 (staying "all deadlines and proceedings . . . pending the Fifth Circuit's decision on the district court's preliminary injunction order").

In this respect, the instant case is very different from *Wertenbroch v. Hardeman*, 178 F.4th 186 (5th Cir. 2026). True enough, the district court in that case did not explicitly address the qualified immunity defense early on in proceedings, as Appellants point out. App. Br. 12-13. But the district court in *Wertenbroch* was not managing a consolidated action amid a pending interlocutory appeal involving the same sovereign immunity issues raised in the State's motion to dismiss. Moreover, the *Wertenbroch* court "permitted the litigation to proceed,"

---

*Temple* does not stand for the proposition that the district court was obligated to ignore apparent judicial inefficiencies and rule on Appellants' motion. Instead, the district court appropriately exercised its authority to manage its docket and stay proceedings in light of a pending appeal that raised the same sovereign immunity arguments as presented in the State's motion to dismiss.

thereby exposing the officials to the very pre-trial burdens qualified immunity guards against. *Wertenbroch*, 178 F.4th at 192. Here, the district court stayed the litigation, declining to commence discovery or even, as discussed below, requiring Appellants to answer. And finally, the panel in *Wertenbroch* recognized that the officials' qualified immunity defense was "properly presented before the court." *Id.* Here, briefing before the district court was incomplete. Indeed, *LUPE* Plaintiffs had not even filed a response to the motion to dismiss before the district court denied the motion and re-stayed proceedings.

The State's version of ruling on the sovereign immunity defense "at the earliest possible stage," App. Br. 11-14, would bind the district court to cause significant judicial inefficiencies, impose a needless expenditure of resources on all parties, and potentially intrude on this Court's appellate jurisdiction. Instead, the district court acted within its broad grant of discretion to "not decide anything" by denying the motion without prejudice and subject to refiling, and re-imposing a reasonable stay of proceedings in light of the pending appeal of the preliminary injunction. *Robbins*, 2025 WL 3766015 at *4; *see also Lopez*, 2025 WL 1481275 at *4 ("Because the order neither rejected the immunity defense nor imposed the litigation burdens immunity exists to prevent, it is not an appealable final decision."). Without question, sovereign immunity is an "important issue" that can give rise to

an appealable order if it is actually resolved. *See Metcalf & Eddy, Inc*., 506 U.S. at 145. The district court simply did not decide that issue here.

### B. Appellants Suffered No Pre-Trial Burdens as a Result of the District Court's Order.

The collateral order doctrine exists to prevent harm. *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (conclusive requirement "means that appellate review is likely needed to avoid . . . harm"). The only harm the State claims is the issuance of a "purported" order "to submit to [the district court's] jurisdiction by filing an answer." App. Br. 13-14. But the record contradicts this claim.

Counsel for the State addressed this concern directly with the district court during the June 17 status conference, explaining that the State's motion "raise[s] matters of subject matter jurisdiction" and that it did not "seem right that [the district court] should proceed to the merits" of Appellants' allegations. ROA.1008-09 (Tr. 19:15-20:5). The district court *agreed*, responding that counsel "ma[d]e a good point." ROA.1009 (Tr. 20:12-19). When the district court announced its plan for the State's pending motion it did not order the filing of an answer. ROA.1011 (Tr. 22:2-17) ("I will be denying the motions to dismiss without prejudice, subject to refiling, at such time as is appropriate . . . . And I'm going to stay the matter – stay the case until moved on by the parties or the Court while we wait.").

The district court's one-sentence text order denying the motion without prejudice makes no reference to any obligation to answer *LUPE* Plaintiffs'

complaint. *See* ROA. 980-82. The following day the district court kept its word and re-stayed "all deadlines and proceedings" in *LUPE* until 30 days after the issuance of any mandate to the district court in the then-pending preliminary injunction appeal. ROA. 960-62. The State did not answer *LUPE* Plaintiffs' complaint and was under no obligation to do so. Nothing about the district court's brief colloquy regarding an answer somehow converts the district court's practical and discretionary management of procedurally complex litigation into an order that gives rise to an immediate appeal.

The State's reliance on *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) is therefore misplaced. App. Br. at 13-14. That case "stands for the general proposition that a court 'may not permit discovery against the immunity-asserting defendants before it rules on their defense.'" 54 F.4th at 311; *see also Lopez*, 2026 WL 1481275 at *3 ("The hallmark of *Carswell*" is the "imposition of active litigation burdens despite an unresolved immunity claim.").[4] The district court in

[4] The *Lopez* court reached its holding by determining that legislative and qualified immunity were not jurisdictional bars, distinguishing its decision from that in *Bouchard Transp. Co. v. Florida Dept. of Environmental Protection*, 91 F.3d 1445 (11th Cir. 1996), an out-of-circuit case contemplating sovereign immunity. *Lopez*, 2026 WL 1481275 at *3 n. 1. Although sovereign immunity is at issue in this appeal, the crucial distinction for purposes of appellate jurisdiction is that the district court in *Bouchard Transp. Co*. ordered the State to "participate in mediation for two months," overruling its specific Eleventh Amendment objections to mediation. 91 F.3d at 1447. The district court in this case imposed no remotely similar pre-trial burden in this case. *See* ROA.960-62.

*Carswell* adopted a "standard [qualified immunity] scheduling order" that specifically directed defendants to assert qualified immunity "by way of an answer," denied a motion to stay discovery, and permitted service of deposition notices on eight individual defendants asserting qualified immunity before this Court ultimately ordered a stay of pre-trial discovery. *Id*. at 309-10. In contrast, here the State did not suffer a single pre-trial burden as a result of the district court's order. The district court required no answer, permitted no discovery, and immediately reinstated the very stay that the State itself requested from the district court earlier in proceedings. ROA. 960-62. The State's claim that the district court allowed litigation to "continue apace" is flatly untrue. App. Br. 13.

### C. The District Court's Order Does Not Threaten a Substantial Public Interest or High-Order Value.

For the third prong of the collateral order doctrine—whether a decision is effectively reviewable on appeal of final judgment—the "decisive consideration" is whether delaying appellate review "'would imperil a substantial public interest' or 'some particular value of high order.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Will*, 546 U.S. at 352-53). Here, the Court need look no further than the fact that the State can obtain the relief it requests here *at any time* by abandoning its appeal and moving to dismiss in the district court. The State requests "remand to allow the district court to evaluate the sovereign immunity argument" in the first instance. App. Br. 16. The district court made abundantly clear that this

was its intended course of action following expiration of the discretionary stay. ROA.960-62 (Re-imposed Stay Order). That stay expired on May 15, 2026. Appellants' request to this Court for an order vacating the text order and remanding for the district court's consideration of sovereign immunity in the first instance undermines their claim that immediate appellate review is needed to protect the public interest or other important values.

Courts increasingly look to the "importance" of the decision to determine its appealability, which lends to an "increasingly pragmatic approach to the collateral order doctrine." *Henry*, 566 F.3d at 178-80 ("Importance informs the three *Cohen* criteria as well as our overall analysis."). The district court neither required the State to answer the *LUPE* complaint nor subjected the State to any other pre-trial burden. The State was protected by the district court's reimposition of the stay originally requested by the State itself. The State chose to continue this appeal when the relief it requests is already available from the district court. In sum, the district court's order did not conclusively determine the question of Appellants' sovereign immunity or otherwise resolve the issue, and it is not effectively unreviewable. Accordingly, this Court should dismiss this appeal for want of jurisdiction and return the case to the district court for evaluation of the State's sovereign immunity arguments in the first instance.

## II. Remand Is Appropriate for the District Court to Address the Sovereign Immunity Arguments in the First Instance.

If the Court concludes that it has appellate jurisdiction, it should remand the case to the district court to consider the State's sovereign immunity defense in the first instance.

As the State acknowledges, the district court did not consider the merits of its motion to dismiss. App. Br. 12. What's more, the district court did not have the benefit of responsive briefing, and provided no reasoning justifying its order. In such cases, it is appropriate for this Court to vacate the orders denying the motions to dismiss and remand the case to the district court to allow the parties to complete briefing, which is common practice when a district court makes none of the findings necessary for an appellate court to consider its reasoning. *See, e.g.*, *Supermercados Econo, Inc. v. Integrand Assurance Co.*, 375 F.3d 1, 3 (1st Cir. 2004) ("[W[hen 'the absence of any subsidiary findings of fact or conclusions of law renders it virtually impossible for this court to do anything but speculate as to the basis of the district court's ruling,' we are unable to engage in meaningful appellate review and must remand to the district court.") (quoting *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996)); *see also Lopez*, 2026 WL 1481275, at *4. Nevertheless, although the State requests that the Court remand this case to the district court to consider its motion to dismiss in the first instance, the State invites

the Court in the alternative to reach the underlying merits, despite an incomplete record.

This Court generally "do[es] not consider an issue not passed upon below." *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020). In *Texas v. Caremark, Inc.* the Court found error in the district court's "summary" denial of the State's motion to dismiss counterclaims based on sovereign immunity. 584 F.3d 655, 658-59 (5th Cir. 2009). Because the district court did not engage with the merits, "the record [was] insufficiently developed for [this Court] to resolve the sovereign immunity question." *Id*. The Court vacated the district court's order and remanded the case to the district court for consideration of sovereign immunity in the first instance. *Id*. at 660.

As in *Caremark, Inc.*, *id*. at 659-60, factual development is needed here to address the State's sovereign immunity arguments. Contrary to the State's argument in its motion to dismiss, that "S.B. 4 has not been enforced to date against anyone, much less against any of the Plaintiffs in this case" and that at least "a scintilla" of evidence of enforcement was needed to overcome sovereign immunity (App. Br. 13-14), S.B. 4 is currently in effect and enforced in Texas, including in Hidalgo County, where LUPE's members reside. ROA.2142. The Texas Department of Public Safety ("DPS") has arrested individuals for violation of S.B. 4's illegal entry

provision.[5] Remand is appropriate to evaluate the facts related to the State's enforcement of S.B. 4 in the first instance.

In case after case this Court has remanded to the district court for consideration of immunity issues in the first instance because of inadequate development of the record. *See, e.g.*, *Wertenbroch*, 178 F.4th at 193 (remanding the qualified immunity question to the district court where district court failed to address qualified immunity claim); *Ashley v. Clay County*, 125 F.4th 654, 661 (5th Cir. 2025) (declining to reach the merits of the immunity claim because it was "a matter for the district court to decide in the first instance"); *Reyes v. Sazan*, 168 F.3d 158 (5th Cir. 1999) (vacating and remanding to district court); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (remanding the case to the district court for consideration of immunity question). If the Court concludes it has appellate jurisdiction, it should do the same here.

---

[5] Xavier Alvarez & Erika De Los Reyes, *Arrests Under Texas' Controversial SB4 Law Begin in Rio Grande Valley*, The Monitor (May 27, 2026), https://myrgv.com/publications/the-monitor/2026/05/27/arrests-under-texas-controversial-sb4-law-begin-in-rio-grande-valley/.

## III. <u>Even If the Court Were to Reach the Merits, Sovereign Immunity Does Not Bar *LUPE* Plaintiffs' Claims against Appellants.</u>

Even if the Court were to accept the State's invitation to consider the merits of sovereign immunity, App. Br. 23, and it should not, *LUPE* Plaintiffs have pleaded sufficient facts to withstand the State's motion to dismiss.[6]

The State does not dispute that *LUPE* Plaintiffs seek "prospective, injunctive relief" that is "based on an alleged ongoing violation of the federal constitution" and is directed against "a state actor, in her official capacity." *K.P. v. LeBlanc* (*K.P. II*), 729 F.3d 427, 439 (5th Cir. 2013) (citing *Ex Parte Young*, 209 U.S. 123, 159 (1908)); *see also Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (citing *Green*

---

[6] *LUPE* Plaintiffs provide the discussion in this section out of an abundance of caution, so as not to waive arguments concerning Appellants' sovereign immunity defense, not because it would be appropriate for the Court to take up the merits. Assuming *arguendo* that the Court has appellate jurisdiction, remand for consideration of the merits of sovereign immunity is appropriate. *See supra* Sec. II.

The State moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ROA.937. A court should grant a motion to dismiss under 12(b)(1) "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). And under Rule 12(b)(6), a court determines whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Norsworthy v. Houston Indep. School Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although this Court need not make a determination on these issues at this juncture, *LUPE* Plaintiffs' complaint satisfies both standards.

*Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc)).

The State only contends that its officials are not proper defendants under *Ex parte Young* because they lack an "enforcement connection" to S.B. 4. App. Br. 17. This Court has identified three "guideposts" for assessing whether a state official has the requisite enforcement connection under *Ex parte Young*. *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 257 (5th Cir. 2025); *see also Ogg*, 105 F.4th at 325 (quoting *Tex. All. for Retired Ams. v. Scott* (*TARA*), 28 F.4th 669, 672 (5th Cir. 2022)) ("(1) the state official has 'more than the general duty to see that the laws of the state are implemented' . . . ; (2) the state official has a 'demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compels or constrains persons to obey the challenged law.'"). The state official needs only "some connection with enforcement" of the challenged provisions, *Nelson*, 163 F.4th at 258, so even a "scintilla of enforcement by the relevant state official with respect to the challenged law will" satisfy the requisite connection to enforcement, *Tex. Democratic Party v. Abbott* (*TDP II*), 978 F.3d 168, 179 (5th Cir. 2020) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)).

As set forth below, there is a sufficient enforcement connection under *Ex parte Young* to withstand the State's motion to dismiss on sovereign immunity.

### A. Director Martin Is Sufficiently Connected to the Enforcement of S.B. 4.

The State concedes that DPS Executive Director Freeman F. Martin likely has enforcement responsibilities under S.B. 4. App. Br. 19. Instead, the State argues only that *LUPE* Plaintiffs "have pointed to no evidence specifically suggesting that Director Martin will enforce or has a 'demonstrated willingness' to enforce S.B.4." App. Br. 19-20. Although not necessary at the motion-to-dismiss stage, such evidence is abundant. DPS officers under Director Martin's direction[7] have begun conducting arrests under S.B. 4.[8] Appellant Martin and his predecessors have also shown their willingness to enforce S.B. 4 in statements both to the Texas Legislature and to this Court, demonstrating that Director Martin is sufficiently connected to S.B. 4's enforcement to overcome his sovereign immunity defense.

First, in opposition to the *Las Americas* preliminary injunction motion requested in early 2024, the State provided the district court a declaration of Victor Escalon, then-Regional Director for DPS with responsibility for DPS operations in South Texas. *See* ROA.1366-69 (Decl. of Victor Escalon). In his declaration, Mr. Escalon stated that DPS "will prioritize enforcement of SB 4 in counties that are

[7] Appellant Martin acts as executive director of DPS and "is directly responsible to the commission for the conduct of the department's affairs." Texas Gov't Code § 411.006(a)(1)-(2).

[8] *See supra* note 5 and accompanying text.

close to facilities operated by TDCJ and the State," "expects" to detain people arrested under S.B. 4 "primarily in State-owned facilities," and will "monitor compliance with orders of return" and even "escort" non-citizens to the port of entry. ROA.1368 ¶¶ 4, 9.

Second, Director Martin's predecessors have demonstrated a willingness to enforce S.B. 4, a position which Director Martin has never disclaimed. Steven McCraw, the former Director of DPS, testified before the Texas Senate Committee on Border Security that S.B. 4 could lead DPS to conduct an additional 75,000 to 80,000 arrests each year. *See United States v. Texas*, 173 F.4th at 695–96 (en banc) (Richman, J., dissenting) (citing *Public Hearing Before the S. Comm. on Border Sec.*, at 49:19–50:45, 2023 Leg., 88th Sess. (Tex. Nov. 1, 2023), https://senate.texas.gov/videoplayer.php?vid=18888&lang=en (statement of Steven McCraw, Director, Tex. Dep't of Pub. Safety)).

State officials' testimony and the actual DPS arrests under S.B. 4 go well beyond the required "scintilla of enforcement" necessary to show Director Martin's demonstrated willingness to enforce S.B. 4's provisions. *Ogg*, 105 F.4th at 329 (citing *Tex. Democratic Party v. Abbott* (*TDP I*), 961 F.3d 389, 401 (5th Cir. 2020));

*TDP II*, 978 F.3d at 179. Director Martin is therefore a proper party to this action under *Ex parte Young*.[9]

### B. Attorney General Paxton Is Sufficiently Connected to Enforcement of S.B. 4.

The State also argues that Attorney General Paxton "lacks the requisite enforcement connection to S.B.4." App. Br. 18-19. Appellants' assertions are based on an overly broad reading of this Court's case law and are untethered from the statute at issue.

Contrary to Appellants' claim, this Court has not held the Attorney General is *never* an appropriate defendant in a suit challenging criminal or other statutes. *See* App. Br. 19 (citing *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023); *City of Austin v. Paxton*, 943 F.3d 993, 999 (5th Cir. 2019)). In fact, in *Nelson*, on which the State relies, this Court held that the Attorney General *did* have a sufficient enforcement connection to the challenged statute's provision that authorized the Attorney General to sue to recover civil penalties from voter registrars. *Nelson*, 163 F.4th at 270.

---

[9] Appellants do not contest—nor could they—that Director Martin satisfies this Court's remaining *Ex parte Young* guideposts: bearing more than a general duty and compelling or constraining obedience with S.B. 4. As Director of DPS, Director Martin "ha[s] more than just the general duty to see that the state's laws are implemented—[he is] *directly* responsible for enforcing Texas's criminal laws," and "DPS . . . officers arrest people for violating Texas law, exercising 'compulsion or constraint' in service of the law." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024) (emphasis in original).

*Nelson*, as well as *Ostrewich v. Tatum*, 72 F.4th 94 (5th Cir. 2023), on which the State also relies, hinged on whether the Texas Election Code provided the Attorney General with specific enforcement of electioneering and other election-related statutes, not the Attorney General's enforcement of S.B. 4's immigration enforcement scheme.

Attorney General Paxton has the requisite enforcement connection here because S.B. 4 specifically requires the Attorney General to enforce the statute: the law requires the Attorney General to represent officials sued for damages for enforcing the statute. Tex. Civ. Prac. & Rem. Code § 117.003(f). The role of the Attorney General in defending individuals indemnified by S.B. 4 is a core provision of the statute. And S.B. 4 imposes a specific and *mandatory* duty for the Attorney General as part of S.B. 4's enforcement. Attorney General Paxton therefore has a sufficient enforcement connection with S.B. 4.[10]

Attorney General Paxton has also demonstrated a willingness to enforce S.B. 4 and to compel or constrain obedience to S.B. 4. For instance, Attorney General Paxton called for the creation of S.B. 4. *See Public Hearing Before the S. Comm. on Border Sec.*, 2023 Leg., 88th Sess. (Tex. Mar. 16, 2023) (statement of Ken Paxton, Att'y Gen. of Texas starting at 9:06), https://tlcsenate.granicus.com/

[10] Attorney General Paxton also has the authority to assist in prosecutions of criminal cases as second chair and can take the lead on prosecutions at the invitation of a local district attorney. *See* Tex. Gov't Code § 402.028(a).

MediaPlayer.php?view_id=53&clip_id=17395 (expressing "frustration" with the inability of Texas to enforce immigration law and calling for the Texas Legislature to enact a law to "overturn" *Arizona v. United States*, 567 U.S. 387 (2012)). He has never disclaimed his support for S.B. 4's provisions. *Compare City of Austin*, 943 F.3d at 1001-02 (holding Attorney General was not a proper party under *Ex parte Young* because the plaintiff city had not shown that the Attorney General had demonstrated a willingness to enforce that provision against the city's ordinances).

Accordingly, Attorney General Paxton is a proper defendant in this action under *Ex parte Young*.

### C. Governor Abbott Has More Than a General Duty to Enforce S.B. 4.

Appellants' argument that Governor Abbott has only a "general duty to see that the laws of the state are implemented" is unavailing. App. Br. 18 (quoting *TARA*, 28 F.4th at 672). State actors have more than a general duty to enforce a provision when they are "specially charged with the duty to enforce the statute." *Ex parte Young*, 209 U.S. at 158; *see also Ogg*, 105 F.4th at 325–26; *but see Air Evac EMS, Inc. v. Texas, Dept. of Ins., Div. of Workers' Compensation,* 851 F.3d 507, 519 (5th Cir. 2017) (noting that direct enforcement of the challenged law was not required and that actions constraining the plaintiffs were sufficient to invoke the *Ex parte Young* exception).

Governor Abbott has more than a general duty to enforce S.B. 4, because he maintains supervisory control over DPS. DPS is part of the executive branch of Texas state government. *See* Tex. Gov't Code Ann. § 411.001. DPS operates under the direction of the Public Safety Commission (the "Commission"), whose members are appointed by the Governor. *See id.* §§ 411.003, 411.004. Because the Governor appoints the Commission and DPS carries out the challenged provisions, there is an executive branch chain of authority directly connecting the Governor to DPS, and to the enforcement of S.B. 4. *See United States v. Texas*, 586 F. Supp. 3d 574 (2022) (holding that Governor had sufficient enforcement authority over his executive order because he exercised sufficient control over the Texas Department of Public Safety, the agency tasked with enforcing the challenged order). The State's citation to *United States v. Abbott*, for the contention that "Abbott does not possess the power of prosecution" for "state criminal offenses" is inapposite. App. Br. 18 (citing *United States v. Abbott*, 85 F.4th 328, 337 (5th Cir. 2023)). That case concerned "'[e]nforcement actions [that] would be undertaken by *local* authorities.'" *United States v. Abbott*, 85 F.4th at 337 (quoting *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020)) (emphasis added). S.B. 4, by contrast, contemplates direct enforcement by DPS officers who, as discussed above, have already begun enforcing S.B. 4's provisions.

Appellants do not dispute that Governor Abbott has demonstrated his willingness to enforce S.B. 4. For example, on February 29, 2024, the Governor issued the following statement in a press release:

> Texas will immediately appeal this decision, and we will not back down in our fight to protect our state—and our nation—from President Biden's border crisis. . . . Texas has the right to defend itself because of President Biden's ongoing failure to fulfill his duty to protect our state from the invasion at our southern border.

Press Release, *Governor Abbott Statement On Preliminary Injunction Against SB 4* (Feb. 29, 2024), https://gov.texas.gov/news/post/governor-abbott-statement-on-preliminary-injunction-against-sb-4. These statements indicate Governor Abbott's demonstrated willingness to enforce S.B. 4. Accordingly, he is a proper defendant under *Ex parte Young*.

This Court is a court "of review, not first view." *Utah v. Su*, 109 F.4th 313, 320 (5th Cir. 2024). If the Court concludes that it has appellate jurisdiction, given the lack of a record below and the necessary factual presentation for determining the application of *Ex parte Young*, the Court should remand this case for the district court's consideration in the first instance. However, if the Court finds it appropriate to take up the merits, the State's sovereign immunity defense fails.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of jurisdiction or, alternatively, remand this case to the district court for consideration of Appellants' motion to dismiss in the first instance.

Dated: September 14, 2026

Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
nperales@maldef.org
Alma Buena
Antonio DelGrande
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, INC. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476

*/s/ Lynn Damiano Pearson*
Lynn Damiano Pearson
damianopearson@nilc.org
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
Telephone: (213) 639-3900

Peter McGraw
mcgraw@nilc.org
NATIONAL IMMIGRATION LAW CENTER
P.O. BOX 43573
Washington, D.C.
Telephone: (213) 639-3900

*Counsel for LUPE Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d) because it contains 7,495 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Nina Perales*
Nina Perales
MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
110 Broadway Street
San Antonio, TX 78205
(210) 224-5476

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Nina Perales*
Nina Perales
MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
110 Broadway Street
San Antonio, TX 78205
(210) 224-5476